## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROBERT J. GERHARDT,

       Plaintiff,

vs.                                                                       No. CIV 15-0797 JB/LAM

VINCENT MARES, Executive Director,
New Mexico Racing Commission;
NEW MEXICO RACING COMMISSION;
DAVID KEITER, Steward, New Mexico
Racing Commission; ROBERT M. DOUGHTY, III,
Commissioner; BEVERLY BOURGUET,
Commissioner; JERRY COSPER, DVM,
Commissioner; GAYLA D. MCCULLOCH,
Commissioner; RAY WILLIS, Commissioner;
ROSCOE WOODS, Assistant Attorney General;
JOHN DOE(S) 1-5, New Mexico Racing Commission,

       Defendants.

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** comes before the Court on Plaintiff Robert J. Gerhardt's Motion to

Alter or Reconsider Judgment, filed February 19, 2016 (Doc. 49)("Motion to Reconsider").  The

Court held a hearing on May 16, 2016.  <u>See</u> Transcript of Hearing at 1 (taken May 16,

2016)("Reconsideration Tr.").[1]  The primary issues are: (i) whether the Motion to Reconsider

was timely under rule 59 of the Federal Rules of Civil Procedure; and (ii) whether Gerhardt's

decision to abandon his administrative appeal with the New Mexico Racing Commission has

changed the circumstances of his claims to warrant reconsideration of the Final Judgment under

rule 60 of the Federal Rules of Civil Procedure.

---

[1]The Court's citations to the transcript for this hearing refer to the court reporter's
original, unedited version.  Any final version may contain slightly different page and/or line
numbers.

First, the Court concludes that Gerhardt's Motion to Reconsider, filed twenty-nine days after the Court entered its Final Judgment, is untimely under rule 59.   Second, the Court concludes that Gerhardt's unilateral decisions to abandon his administrative appeals process with the Board of Stewards of the New Mexico Racing Commission does not present the Court with sufficient evidence to demonstrate an exceptional change of circumstances warranting the court to reconsider its Final Judgment under rule 60.   The Court will thus deny the Plaintiff's Motion to Reconsider.

## FACTUAL BACKGROUND

Gerhardt owns a racehorse known as Three Wild Dreams.   See Amended Complaint for Damages for Constitutional Violations, Prima Facie Tort and Civil Conspiracy, filed October 9, 2015 (Doc. 28)("Complaint").   Three Wild Dreams was registered to compete in a race meet on May 24, 2014, at the Ruidoso Downs Race Track in Ruidoso Downs, New Mexico.   See Complaint ¶¶ 14, 16, at 2-3.   The purse value of this race was nearly one million dollars.   See Complaint ¶ 17, at 3.   Defendant David Keiter, the race's presiding steward,[2] "scratched"[3] Three Wild Dreams from the race moments before it began.   Complaint ¶¶ 18-19, at 3.   Keiter acted "under the authority and specific direction of Vincent Mares, Executive Director of the" Racing Commission.   Complaint ¶ 20, at 3.

---

[2] Section 60-1A-2 of the Horse Racing Act defines "steward" as "an employee of the commission who supervises horse races and oversees a race meet while in progress, including holding hearings regarding licensees and enforcing the rules of the commission and the horse racetrack."   N.M. Stat. Ann. 1978 § 60-1A-2(GG).   One of the stewards' duties is conducting hearings on complaints brought on the stewards' motion, or on receipt of a complaint from an official or third party.   See 15.2.1.9(B)(2)(a) NMAC.

[3] A "scratch" is "the act of withdrawing an entered horse from a contest after the closing of entries." 15.2.5.9(B)(1) NMAC.

Keiter stated that he scratched Three Wild Dreams because of Gerhardt's failure to comply with "Rule 15.2.5.12(B) (the 'Breed Certificate Rule')," which states that "[a] horse shall be ineligible to start in a race when its breed registration certificate is not on file with the racing secretary." Complaint ¶¶ 21-22, at 3. The racing secretary[4] at Ruidoso Downs had copies of Three Wild Dreams' breed registration certificate on file, instead of the original version. See Complaint ¶ 24, at 3.

"On or about May 24, 2014, David Keiter, acting in consort with Vincent Mares, interpreted the Breed Certificate Rule to require the 'original' Breed Certificate to be on file at a race location on race day." Complaint ¶ 25, at 3-4. The Racing Commission had not enforced the Breed Certificate Rule "in recent history when two live races were ongoing." Complaint ¶ 26, at 4. The Racing Commission did not scratch any horses during races within the same event on May 22-23, 2014. See Complaint ¶ 28, at 4.

"Leasa Johnson, an investigator with the NMRC [New Mexico Racing Commission], was present at the Ruidoso Downs races on May 24, 2014." Complaint ¶ 30, at 4. Johnson inquired into the horse scratches on May 24, 2014, and Keiter advised her that he was enforcing the Breed Certificate Rule. See Complaint ¶ 31, at 4. Johnson expressed concern, because the Racing Commission had not enforced the "original" certificate requirement in recent history and the Racing Commission was not enforcing it consistently as to all competitors. See Complaint ¶¶ 32-33, at 4. "Based on the horses scratched, it appears that the NMRC was targeting horses trained by trainer John Stinebaugh." Complaint ¶ 34, at 4. The Racing Commission did not enforce the requirement until the third day of the Ruidoso Downs meet and did not apply the

---

[4]A "racing secretary" is responsible for creating each day's racing card -- the list of horses eligible to race. See Ruidoso Racing Secretary Fired, Amarillo Globe News (Sept. 13, 2000), http://amarillo.com/stories/2000/09/13/spo_ruidoso.shtml#.Vp-3CEbYgeB.

original requirement to every horse during the three-day Ruidoso Downs meet.  See Complaint ¶¶ 35, 39 at 4, 5.  The Racing Commission provided only "select owners and trainers" with advance notice that it would begin enforcing the "implied" Breed Certificate Rule's "original" requirement.  Complaint ¶¶ 37, 43, at 5-6.

Gerhardt filed an appeal with the Racing Commission regarding the improper scratch on or about May 30, 2014.  See Complaint ¶ 45, at 6.  The Racing Commission appointed Leann Warbelow as the hearing officer, and she held a hearing on several similar cases on November 20, 2015.  See Complaint ¶¶ 46-47, at 6.  "Lonnie Barber, Director of the SunRay Park Race Track for eleven years and former president of the Horseman's Association for fifteen years testified during the NMRC hearing that the NMRC had not enforced the original certificate requirement of the Breed Certificate Rule in the past."  Complaint ¶ 40, at 5.  Warbelow issued her initial report and recommendation to the Racing Commission (the "Initial Recommendation") on December 16, 2014.  See Complaint ¶ 102, at 13.  She found that the scratch "shows a lack of impartiality and is inconsistent with the statutory directive of the Horse Racing Act that rules of the Commission be 'construed to ensure that horse racing in New Mexico is conducted with fairness.'"  Complaint ¶ 48, at 6.

On March 12, 2015, the Racing Commission voted to take the Warbelow's decision "under advisement."  Complaint ¶ 50, at 6.  On July 8, 2015, the Racing Commissioners -- Robert M. Doughty III, Beverly Bourguet, Jerry Cosper, Gayla D. McCulloch, and Ray Willis -- and Roscoe Woods ("Woods") set up a "settlement meeting" with "the primary purpose of assessing the strength of Plaintiff's case."  Complaint ¶ 106, at 14.  Woods had no authority or intent to resolve the issue, and used the meeting "solely to gather information by which to influence and/or change the hearing officer's decision."  Complaint ¶¶ 108-109, at 14.  On July

22, 2015, the Racing Commissioners held a meeting, at least in part to discuss Gerhardt's claims. See Complaint ¶ 110, at 14.  They ignored the relevant regulations, which required them to discuss the issue in an open meeting.  See Complaint ¶¶ 111-112, at 14-15.  "Based on information extracted during a settlement meeting, the State Commissioners acted to 'remand' Gerhardt's matter for further examination. No explanation was provided as to how such process was to proceed or the reasons/purposes for a remand."  Complaint ¶ 113, at 25.  The Racing Commission has not taken any further action on Gerhardt's claims.  See Complaint ¶ 114, at 15.

## PROCEDURAL BACKGROUND

Gerhardt filed his Complaint on September 10, 2015.  See Verified Complaint for Damages for Constitutional Violations, Prima Facie Tort and Civil Conspiracy, filed on September 10, 2015 (Doc. 1)("Verified Complaint").[5]  Gerhardt filed his First Amended Complaint on October 9, 2015.  See Complaint.  Gerhardt's Complaint targets Woods,[6] the Racing Commission, its Racing Commissioners, Keiter (its steward), Mares (its executive director), and five unidentified Racing Commission employees.  See Complaint ¶¶ 5-9, 101, 107-109, at 2, 13-14.  The Complaint appears to allege: (i) violations of the Fourteenth Amendment to the Constitution of the United States' Due Process Clause; (ii) violations of the Fourteenth Amendment's Equal Protection Clause; (iii) a prima facie tort under New Mexico state common law; and (iv) state common-law conspiracy.  See Complaint ¶¶ 1-124, at 1-17.  Gerhardt seeks:

---

[5]The Court recognizes the error in the title of including two "and(s)".

[6]The Complaint does not explain whether it targets Woods in his official capacity, his individual capacity, or both.  See Motion to Dismiss for Failure to State a Claim, and Motion to Dismiss for Lack of Jurisdiction at 8, filed on October 16, 2016 (Doc. 29)("Woods Motion"). The Court will presume, as Woods does, that Gerhardt sues him in both capacities for the purpose of describing the procedural background.  See Woods Motion at 8 (citing James v. Argeys, 2015 WL 881691, at *3 (D. Colo. Feb. 26, 2015)(Shaffer, J.)("[W]here the Amended Complaint is not completely clear, the court will presume that Defendant Argeys has been sued both in his official and individual capacities[.]")).

(i) a declaration that the Defendants violated his right to due process; (ii) a declaration that the Defendants violated his right to equal protection under the law; (iii) attorney's fees and costs; (iv) a "declaration that the actions of identified Defendants described in this Complaint establishes [sic] a pattern and practice of the NMRC to violate its own governing laws, regulations, policies and practices"; (v) "[j]udgment in favor of Plaintiff on each of his Causes of Action"; (vi) "[g]eneral compensatory damages according to proof"; (vii) punitive damages; (viii) post-judgment interest; and (ix) "[a]ny and all other relief that may be appropriate." Complaint ¶¶ 1-9, at 17-18 (listing requested relief).

1.      **The Woods Motion.**

Woods filed his motion to dismiss on October 16, 2015.  See Woods Motion at 1.  Woods sums up his argument:

> Plaintiff's sole cause of action against Mr. Woods is a claim for civil conspiracy. Mr. Woods, however, is protected from suit by the immunity afforded by the Eleventh Amendment to the United States Constitution.  Plaintiff's claims against Mr. Woods are further barred by the New Mexico Tort Claims Act.  Additionally, Mr. Woods enjoys qualified immunity for acts undertaken in the course of his duties as an Assistant Attorney General, and Plaintiff fails to allege any facts that would defeat such immunity.  Finally, even taking all of the Amended Complaint's factual allegations as true, the Amended Complaint fails to state a claim upon which relief can be granted against Mr. Woods.

Woods Motion at 2.

First, Woods argues that sovereign immunity bars Gerhardt's claim against him in his official capacity.  See Woods Motion at 9-13.  He explains that the New Mexico Torts Claims Act, §41-4-1, creates only limited exceptions to the state's Eleventh Amendment immunity.  See Woods Motion at 10-11.  These exceptions, he says, apply only when the plaintiff brings suit in the state district courts.  See Woods Motion at 11 (citing N.M. Stat. Ann. 1978 § 41-4-18(A)("Exclusive original jurisdiction for any claim under the Tort Claims Act shall be in the

district courts of New Mexico.")); Bishop v. John Doe 1, 902 F.2d 809, 810 (10th Cir. 1990). Moreover, Woods adds, New Mexico "has not waived its sovereign immunity in any forum with respect to claims for civil conspiracy."  See Woods Motion at 12 (emphasis in original).

Second, Woods contends that qualified immunity shields him from Gerhardt's civil conspiracy claim.  See Woods Motion at 12-15.  He notes that Gerhardt fails to allege even that he acted under color of law.  See Woods Motion at 12.  He also argues that his participation in the settlement conference did not violate any constitutional rights, much less any clearly established rights.  See Woods Motion at 15.  He concedes that Gerhardt "is entitled to have his appeal of the Steward's decision reviewed by the Racing Commission," but adds that Gerhardt "fails to allege that the Commission has refused to consider his appeal."  Woods Motion at 15.

Finally, he attacks Gerhardt's civil conspiracy claim under rule 12(b)(6).  See Woods Motion at 15-16.  He states that "[p]articipating in a settlement discussion is not actionable, in tort or otherwise; nor is attending a settlement meeting to learn about an adversary's position, or to 'gather information,'" a legally cognizable wrong.  Woods Motion at 15-16.  Woods asserts that the rest of Gerhardt's Complaint offers only

> robotic statements along the lines that Mr. Woods acted 'to conspire and deprive Plaintiff of his constitutional rights to due process and equal protection under the law,' Amended Complaint ¶ 101, acted "to further deprive Plaintiff of his property interests and further the harm caused by procedural violations of NMRC employees," id. ¶ 107, and also "combined" with other Defendants "to engage in a civil conspiracy that was furthered by overt acts," id. ¶ 116.

Woods Motion at 15-16.  These allegations, he contends, are exactly the sort of "formulaic recitation of the elements of a cause of action" that federal courts routinely reject.  Woods Motion at 16 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Gerhardt responded on October 30, 2015.  See Plaintiff's Response to Defendant Roscoe Woods' Motion to Dismiss Amended Complaint, filed October 30, 2015 (Doc. 32)("Woods

Response").   Gerhardt asserts that, despite his Complaint's reference to the NMTCA, see Complaint ¶ 2, at 1, Woods' sovereign immunity arguments are irrelevant,  see Woods Response at 6.  Gerhardt states that Woods conspired with other state actors to violate "his constitutional right to equal protection under the law as applied to state actors via 42 U.S.C. § 1983."  Woods Response at 6.  Although the Woods Response is difficult to follow, Gerhardt seems to argue that Woods' participation in the settlement conference was merely one part of a greater conspiracy among the Defendants to violate Gerhardt's federal constitutional rights.  See Woods Response at 8-9.  He contends that Woods violated these rights, in part, by "afford[ing] an unfair advantage to other individuals in violation of the equal protection clause."  Woods Response at 9.

Gerhardt also counters Woods' argument that he fails to allege any state action.  See Woods Response at 10.  He notes that, although he did not use "the magic words advocated by defense counsel," he "identified each Defendant as a state employee" and pled other facts that demonstrate that Woods acted under color of state law.[7]  Woods Response at 10.  He notes that Woods "had no authority to actually settle Plaintiffs [sic] claims when hosting [the settlement] meeting, nor had he requested any," arguing that this fact demonstrates Woods' bad faith.  Woods Response at 11.

Gerhardt next contends that Woods is not entitled to qualified immunity.  See Woods Response at 13-14.  He continues to argue that Woods acted under color of law.  See Woods Response at 13 (citing Jojola v. Chavez, 55 F.3d 488 (10th Cir. 1995)("[S]tate employment is generally sufficient to render the defendant a state actor[.]")).  Gerhardt cites state regulations

_____

[7]Gerhardt also argues that Woods acknowledges "that its acts were taken in the course of his state employment and under color of law" by "raising a qualified immunity argument."  Woods Response at 10.  The Court sees this logic as too unfair to civil rights defendants.  It does not seem to allow for any defendant to argue that he did not act under color of law and, if unsuccessful, then seek the protection of qualified immunity.

and cases to show that his right "to engage in his chosen profession" was clearly established on May 24, 2014. Woods Response at 16 (citing Stinebaugh v. N.M. Racing Comm'n, No. 32,840, 2015 WL 4874288 (N.M. Ct. App. July 9, 2015)). See State Racing Comm'n v. McManus, 1970-NMSC-134, ¶ 19, 476 P.2d 767, 771 (noting that a license "is not a vested right within the meaning of the due process clause of the state and federal constitutions," but recognizing that a jockey has "a right to engage in his chosen profession").

Gerhardt concludes by discussing how the alleged conspiracy's actions violated his constitutional rights. See Woods Response at 16-18. He says that the Defendants collectively created new regulations, reinterpreted old regulations, and implemented them selectively. See Woods Response at 17. He also challenges the adequacy of New Mexico's procedural protections as applied to him. See Woods Response at 17. He notes that he received a hearing only after his deprivation, that the hearing did not occur "in a 'meaningful time and in a meaningful manner,'" and that Woods was aware of and involved in these violations. Woods Response at 17. Finally, he argues that the Court should grant him leave to amend his Complaint if the Court finds it inadequate. See Woods Response at 20.

Woods replied on November 16, 2015. See Woods Reply at 1. Woods begins by summarizing his primary arguments:

- Sovereign immunity bars his lone claim against Mr. Woods, to the extent that claim is raised against Mr. Woods in his official capacity;

- Qualified immunity mandates dismissal of Plaintiff's claim against Mr. Woods, to the extent that claim is raised against Mr. Woods in his individual capacity[; and]

- The Amended Complaint's only allegation of fact regarding Mr. Woods is that he participated in a settlement discussion with Plaintiff's attorney and did so for the sole purpose of "gathering information," an allegation that cannot sustain Plaintiff's civil conspiracy claim.

Woods Reply at 1-2.  Woods argues that Gerhardt's sovereign immunity argument ignores

> the salient aspects of the sovereign immunity analysis in this case: that our law requires an express waiver or abrogation of the State's sovereign immunity (regardless of whether Defendants conspired to inflict a constitutional or common-law injury on Plaintiff), that no such abrogation or waiver has been established, and therefore that sovereign immunity shields Mr. Woods from this lawsuit.

Woods Reply at 3.  He thus explains that his sovereign immunity defense rests on the absence of

a legislative exception for Gerhardt's suit.  See Woods Reply at 3.  He notes that Gerhardt now

sues him "only for engaging in a conspiracy to violate vaguely described constitutional rights,

and not a conspiracy to commit tortious acts."  Woods Reply at 4.  Woods contends that,

regardless of whether Gerhardt sues for a conspiracy under federal or state law, "the same

prerequisites apply before the State or its officials can be sued in federal court."  Woods Reply at

4.

Woods then repeats his arguments on qualified immunity.  See Woods Reply at 5-8.  He

emphasizes that a plaintiff must do more than identify a constitutional right in the abstract and

allege that the defendant has violated it.  See Woods Reply at 6 (citing Hilliard v. City and Cty.

of Denver, 930 F.2d 1516, 1518 (10th Cir. 1991)).  He asserts that the Complaint never ventures

beyond "numerous generic invocations of 'due process,' 'equal protection,' and 'property

interests[.]'"  Woods Reply at 7.  He again questions the conspiracy claim: "Exactly what

'machinations' did Mr. Woods and the other Defendants undertake in furtherance of their

apparently vast conspiracy against Plaintiff and his sorrel gelding?  The Court, Mr. Woods, and

the other Defendants are left to guess, because the Amended Complaint offers no explanation."

Woods Reply at 10.  Woods concludes by attacking Gerhardt's request that the Court attribute

any wrongdoing committed by any other defendant to Woods.  See Woods Reply at 11.  He

states that Gerhardt "cannot use his Response to introduce new allegations that he failed to include in his Amended Complaint."  Woods Reply at 11.

Gerhardt requested leave to file a surreply on November 24, 2015.  See Surreply Motion at 1.  He explains that a surreply "allows a non-moving party the opportunity to respond to new materials or new legal arguments briefed for the first time in a movant's reply."  Surreply Motion at 1.  Woods, he says, raises two new arguments: that he is immune from suit in his individual capacity as an arm of the State of New Mexico and that his Eleventh Amendment immunity applies to Gerhardt's § 1983 claim.  See Surreply Motion at 2.  Gerhardt also cites to the "complexity of this case and the defenses raised."  Reply Motion at 2.

Gerhardt's proposed surreply responds to Woods' "new" argument that "he is immune from suit in his individual capacity because he is an 'arm' of the state and, thus, he enjoys the same immunity from a 42 U.S.C. § 1983 claim that a state enjoys."  Plaintiff's Sur-Reply to Defendant Roscoe Woods' Motion to Dismiss at 1, filed November 24, 2015 (Doc. 38-1)("Surreply").  Although the Surreply is confusing, Gerhardt appears to argue that Woods cannot benefit from sovereign immunity when sued in his individual capacity.  See Surreply at 2.  The bulk of the Surreply repeats Gerhardt's arguments about state action and the alleged conspiracy.  See Surreply at 3-4.

Woods opposes the Surreply Motion.  See Defendant Roscoe Woods' Response in Opposition to Plaintiff's Motion for Leave to File Sur-Reply, filed December 10, 2015 (Doc. 40)("Surreply Response").  Woods contends that: (i) his reply brief did not raise any new arguments; and (ii) the Surreply "simply restates contentions that Plaintiff already has offered in his response brief."  Surreply Response at 2.  He concludes that "[t]his action is a

straightforward, albeit meritless, Section 1983 and state-law tort suit, and Defendants have raised

straightforward legal bases for dismissal."  Surreply Response at 5.

### 2.    The Commission Motion.

The remaining Defendants (the "Racing Commission Defendants") moved to dismiss the

Complaint on October 28, 2015.  See Commission Motion at 1.  They raise seven primary

arguments.  See Commission Motion at 6-13.  First, they contend that the case is not ripe,

because: (i) the question whether Gerhardt complied with the Racing Commission's regulations

does not present purely legal issues; (ii) awaiting the conclusion of the Racing Commission's

proceedings would allow for a more developed record; (iii) the delay will not cause Gerhardt any

hardship because there is no ongoing impact; (iv) there is "an ongoing administrative proceeding

that is judicial in nature"; and (v) the state courts provide an adequate forum because Racing

Commission decisions are subject to state judicial review.  Commission Motion at 6-7.

Second, the Racing Commission Defendants argue that the Court must abstain from

hearing this constitutional claim during an ongoing state proceeding under Younger[8] abstention.

See Commission Motion at 8.  They explain that there is an ongoing administrative proceeding

that is judicial in nature, that the issue involves important state interests, and that the Racing

Commission's proceedings, in conjunction with appeal to the state courts, are adequate to hear

Gerhardt's claims.  See Commission Motion at 8-9.  They acknowledge that the doctrine does

---

[8]Younger v. Harris, 401 U.S. 37 (1971).  For "Younger" abstention to be appropriate, the
Tenth Circuit has ruled that three elements must be present: (i) interference with an ongoing state
judicial proceeding; (ii) involvement of important state interests; and (iii) an adequate
opportunity afforded in the state court proceedings to raise the federal claims.  See J.B. ex rel.
Hart v. Valdez, 186 F.3d 1280, 1291 (10th Cir. 1999)(citing Middlesex Cnty. Ethics Comm. v.
Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)); Sw. Air Ambulance, Inc. v. City of Las
Cruces, 268 F.3d 1162, 1177–78 (10th Cir. 2001).  Where the criteria for Younger abstention are
otherwise met, even if a party requests monetary damages, a federal court in the Tenth Circuit
must abstain from adjudicating the entire case while state proceedings are ongoing.  See
Braverman v. New Mexico,  2012 WL 5378290, at *21 (D.N.M. 2012)(Browning, J.).

not apply "in cases of proven harassment or prosecutions taken in bad faith or other extraordinary circumstances where irreparable injury can be shown," but contend that a plaintiff must set forth "more than mere allegations of bad faith or harassment."  Commission Motion at 9.

Third, the Racing Commission Defendants assert that the Court should exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, to decline to grant any declaratory relief.  See Commission Motion at 9-10.  They cite Public Service Commission of Utah v. Wycoff Company, Inc., 344 U.S. 237 (1952), stating that it held that "the declaratory judgment procedure will not be used to preempt and prejudice issues that are committed for initial decision to an administrative body or special tribunal, any more than it will be used as a substitute for statutory methods of review."  344 U.S. at 247.

Fourth, the Racing Commission Defendants contend that the Racing Commission is immune from suit for damages under the Eleventh Amendment.  See Commission Motion at 10-11.  They note that Eleventh Amendment protections apply to both states and state agencies.  See Commission Motion at 11 (citing Hans v. Louisiana, 134 U.S. 1 (1890); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)).  The Racing Commission, they assert, is a regulatory agency that state statute creates.  See Commission Motion at 11 (citing N.M. Stat. Ann. 1978 § 60-1A-3).

Fifth, the Racing Commission Defendants argue that they are entitled to absolute immunity, because they perform quasi-judicial functions.  See Commission Motion at 11.  They state that this category includes "hearing officials, executive officials that initiate administrative proceedings, and agency attorneys participating in the administrative proceeding."  Commission Motion at 11.  They contend that the Court applied this same formula to the Racing Commission in Simon v. Taylor, 981 F. Supp. 2d 1020 (D.N.M. 2013)(Browning, J.).  They argue that, by

extension, the same absolute immunity applies to the Racing Commission's individual members. See Commission Motion at 12.  They argue that Woods' "information gathering," for example, "suggests nothing other than a prosecutorial role for the Racing Commission."  Commission Motion at 12.

Sixth, the Racing Commission Defendants contend that Gerhardt has failed to state a claim for civil conspiracy to deprive him of his constitutional rights.  See Commission Motion at 13.  They argue that they should be absolutely immune from Gerhardt's civil conspiracy claim, because: (i) they perform quasi-judicial functions; (ii) quasi-judicial immunity is analogous to prosecutorial immunity; and (iii) prosecutors are absolutely immune if their participation in a conspiracy consists of otherwise immune acts.  See Commission Motion at 13.

Seventh, the Racing Commission Defendants argue that Gerhardt's prima facie tort and civil conspiracy claims are "barred by the Tort Claims Act," because "there has been no waiver of immunity for this tort."  Commission Motion at 13.

Gerhardt responded on November 16, 2015.  See Plaintiff's Response to New Mexico Racing Commission Defendants' Motion to Dismiss Amended Complaint, filed November 16, 2015 (Doc. 35)("Commission Response").  Gerhardt challenges the Racing Commission Defendants' argument that he failed to exhaust his administrative remedies.  See Commission Response at 4.  He explains that the Racing Commission's remand "does nothing but remand the matter back to the hearing officer[9] for 'further review.'  It offers no direction, it points to no errors or deficiencies in the hearing officer's previously tendered report and sets out no path to resolution."  Commission Response at 4.  He contends that there is no statutory exhaustion requirement and that he meets "all if [sic] several of the five grounds for excusing a failure to exhaust."  Commission Response at 5.  The Racing Commission could in theory provide an adequate remedy, he allows, but the Racing Commissioners "have explicitly declined to do so."  Commission Response at 5.  He contends that, because "the harms have and deprivations been fully completed," further Racing Commission proceedings would be futile.  Commission Response at 5-6.  He applies the same arguments to the Racing Commission Defendants' ripeness contentions.  See Commission Response at 7.

―――――――――――
[9]The Plaintiffs later argued that the order remanded the matter to the Executive Director instead of to the hearing officer.  See Tr. at 69:20-22 (Richards).  The Racing Commission's decision does not specify whether it remands the matter back to the Executive Director or to the hearing officer.  See Decision and Order at 1, filed October 28, 2015 (Doc. 31-1).

Gerhardt also questions the Racing Commission Defendants' reliance on Younger abstention. See Commission Response at 6-7. He states that the record in the matter is complete and that the Racing Commission's remand "is nothing more than a sham to obstruct Plaintiff's claims from going to judicial review." Commission Response at 6. He emphasizes that Younger abstention does not require federal deference to a state judicial proceeding reviewing legislative or executive action. See Commission Response at 6-7. Gerhardt concedes that dismissal is appropriate against the Racing Commission unless his prima facie tort claim survives the Commission Motion. See Commission Response at 8. He does not extend the same concession to individual Defendants. See Commission Response at 8-9.

Gerhardt contends that quasi-judicial immunity does not apply to any of the Defendants. See Commission Response at 9-20. He distinguishes Simon v. Taylor on several grounds. See Commission Response at 9-10. He notes that the Court expressly limited its holding: "The Racing Commissioners' functions are, *at least as relevant in this case*, similar to those of judges in the judicial process, the Racing Commissioners' decisions were likely to cause litigation, and the regulatory scheme *contained sufficient safeguards* to prevent unconstitutional conduct." Commission Response at 10 (quoting Simon v. Taylor, 981 F. Supp. 2d at 1062)(emphases in Commission Response). He then distinguishes his situation, noting that "any confidence in decisions -- or lack of decisions -- reached by the Commission is utterly lacking." Commission Response at 11. He adds that the Court's factual findings in Simon v. Taylor assume that the Racing Commission will consider a proposal for decision "in open meeting" and will not take a decision under advisement. Commission Response at 12 (quoting Simon v. Taylor, 981 F. Supp. 2d at 1049). All of these allegations, Gerhardt says, show that the "sufficient safeguards" that Simon v. Taylor requires are illusory in this case. Commission Response at 13-14. He applies

the same legal tests to Keiter and Mares, concluding that they were acting in a regulatory capacity rather than a judicial capacity.  See Commission Response at 14-16.  Finally, Gerhardt concludes that his prima facie tort claim survives, because the Defendants were not acting within their duties' scope under the NMTCA.  See Commission Response at 19-20.

The Racing Commission Defendants replied on December 4, 2015.  See Racing Commission Defendants' Reply in Support of Motion to Dismiss, filed December 4, 2015 (Doc. 39)("Commission Reply").  The Racing Commission Defendants assert that a continued administrative appeal "*could* result in a different determination on Plaintiff's challenges." Commission Reply at 4 (emphasis in original).  They state that the "Plaintiff only speculates, without citing basis, that nothing more will or even can come of the remaining remand and review process."  Commission Reply at 4.  They also point out what they say are weaknesses in the Commission Response:

> Third, while quickly listing and claiming to meet the five criteria purportedly allowing administrative remedies to be bypassed, Plaintiff does not actually articulate why any, let alone all, of these criteria are met. . . .  Plaintiff purports to analyze, apply, and satisfy the first three criteria in a single, run-on sentence that is almost unintelligible.

Commission Reply at 5.  They add that the final factor, irreparable harm absent immediate judicial review, is inconsistent with Gerhardt's assertion that "(i) the harm done to Plaintiffs has already been completed fully; and (ii) the harm is not irreparable as it may be remedied by monetary []compensation."  Commission Reply at 6 (quoting Commission Response at 5).

The Racing Commission Defendants also reinforce their arguments for Younger abstention.  See Commission Reply at 6-7.  They cite to Amanatullah v. Colo. Board of Medical Examiners, 187 F.3d 1160 (10th Cir. 1999), where the United States Court of Appeals for the Tenth Circuit affirmed the United States District Court for the District of Colorado's decision to

abstain from interfering with state proceedings to revoke a physician's license to practice medicine.  See 187 F.3d at 1164.  They argue that, as in Amanatullah v. Colorado Bd. of Medical Examiners, there are ongoing administrative proceedings, the state provides an adequate forum to hear constitutional claims, and the relevant issue involves important state interests.  See Commission Reply at 7.

### 3.    The First Hearing.

The Court held a hearing on December 18, 2015.  See Tr.[10]  The parties largely stuck to the arguments in their briefing.  The Court began the discussion of the Woods Motion by confirming that Gerhardt's claim was "a conspiracy claim for violation of federal constitutional rights under 1983 and it's limited to that," and that "there is no state claim[ -- ]we don't have to worry about New Mexico Tort Claims Act with[] him and he's not being sued in any sort of official capacity."  Tr. at 5:10-23 (Court, Richards).  Gerhardt agreed to both points.  See Tr. at 5:10-23 (Court, Richards).  The Court granted the Surreply Motion, and noted that it reviewed the Surreply and is familiar with its arguments.  See Tr. at 6:11-19 (Court); id. at 7:15-19 (Court).

Woods explained that he was serving as an attorney at the time of the disputed settlement conference.  See Tr. at 14:5-17 (Biernoff).  He noted that, "if in several centuries of American jurisprudence there had been a case that allowed plaintiffs to maintain a suit against the adversary's attorney, as this plaintiff is trying to do here that the plaintiff would have directed the Court's attention to it."  Tr. at 16:16-21 (Biernoff).  If there is such a case, he added, it did not involve mere participation in a settlement conference.  See Tr. at 18:1-24 (Biernoff).  Gerhardt

---

[10]The Court's citations to the transcript for this hearing refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

repeated the argument in his briefing that the Court should not focus only on the settlement conference and should hold Woods responsible "for the entire breadth of the conspiracy." Tr. at 19:18-20:4 (Richards). After questioning from the Court, Gerhardt argued that the conspiracy was aimed at depriving him of his right to engage in his chosen profession -- horse raising. See Tr. at 21:17-22:8 (Court, Richards). At various points, he identified the First, Fourth, Fifth, and Fourteenth Amendments as the source of that right. See Tr. at 22:9-25:3 (Court; Richards).

Woods responded by emphasizing that Gerhardt entered the settlement conference voluntarily. See Tr. at 28:20-29:11 (Biernoff). He also objected to Gerhardt's attempt to "amend [his] pleading orally on the spot at the motion to dismiss hearing" to add First Amendment claims. Tr. at 29:21-30:2 (Biernoff). The Court stated that it was "inclined to grant [the] Woods motion to dismiss the amended complaint," noting that "the allegations here are just as consistent with an attorney doing their job as they are with somebody violating somebody's constitutional rights." Tr. at 33:6-17 (Court).

The parties then moved to qualified immunity. See Tr. at 18-19 (Court). Woods assumed, for the sake of argument, that he had used the settlement conference to learn as much as possible about Gerhardt's case and use it to the Racing Commission's advantage. See Tr. at 34:25-35:5 (Biernoff). Even then, he said, the act would not violate any clearly established constitutional right. See Tr. at 35:5-7 (Biernoff). Gerhardt identified the relevant right as the "right to be protected from arbitrary actions of Government officials."[11] Tr. at 37:21-25 (Richards). He reiterated the need for additional discovery to uncover communications between Woods and other Racing Commission actors. See Tr. at 40:1-41:16 (Richards). The Court stated that it was inclined to agree that there had not been a constitutional violation and that it could not

---

[11]Later during the hearing, Gerhardt defined the relevant right as "the right of a horse owner to engage in the chosen profession of racing." Tr. at 73:17-19 (Richards).

locate a sufficiently similar case to make any such right clearly established.  See Tr. at 45:2-46:10.  Given its agreement with Woods on both grounds, it noted that it was inclined to grant the Woods Motion.  See Tr. at 46:11-17 (Court, Biernoff).

The hearing shifted to the dispute between Gerhardt and the Racing Commission Defendants.  See Tr. at 46:17-20 (Court).  The Racing Commission Defendants first expanded on their ripeness argument.  See Tr. at 47:13-18 (Court, Howell).  They asserted that "the commission itself has not had an opportunity or has not yet made a decision" on Gerhardt's arguments.  Tr. at 48:13-15 (Howell).  In response to pointed questioning from the Court, the Racing Commission Defendants conceded that their delay in deciding the issue could drag on long enough to effectively constitute a denial, see Tr. at 48:25-51:6 (Court, Howell), but they presented excuses for the delay and questioned whether it caused Gerhardt any harm, see Tr. at 50:16-51:17 (Howell).  They also stated that they were waiting for another hearing on the matter.  See Tr. at 51:24-52:7 (Howell).

Gerhardt objected to their description of the situation, noting that the remand decision said nothing about a new hearing and gave no specific directions.  See Tr. at 54:16-55:2 (Richards).  He clarified that he challenged the Breed Certificate Rule's sudden and inconsistent application rather than its proper interpretation.  See Tr. at 56:13-57:14 (Richards).  He also argued that the Racing Commission could not provide adequate compensation, because his horse might be ineligible for future races: "The horses have very short racing careers, and when a horse does not get to race in one particular type of race it impacts their ability to race in future races."  Tr. at 58:12-15 (Richards).

Regarding the Racing Commission Defendants, the Court observed that "it certainly looks like they're kind of dragging their feet here on this thing."  Tr. at 61:22-23 (Court).  The

Court noted that the Racing Commission Defendants' action "puts the Court in a difficult position when the commission is basically saying don't do anything Federal Court, but I don't see the commission doing anything either.  They're wanting me to defer either through a ripeness doctrine or something else, but I don't see them doing anything either."  Tr. at 63:2-8 (Court).  The Racing Commission Defendants argued that they were still within an appropriate time frame, "[b]ecause of the uniqueness of the issue and the recent action on it."  Tr. at 63:17-21 (Howell).

The parties moved to discuss the remaining issues after a break.  See Tr. at 65:20-22 (Court).  The parties repeatedly clashed over whether their dispute was centered on the Racing Commission's proper interpretation of the Breed Certification Rule, with the Racing Commission Defendants repeatedly questioning why the Rule was irrelevant.  See Tr. at 74:14-22 (Howell)("[W]hat's being challenged is a disqualification of a horse from a race, where the basis of the disqualification was an interpretation of that rule.  It's nonsensical to keep arguing that it's irrelevant."); Tr. at 77:5-79:2 (Richards)("[R]ight or wrong we don't care, they applied it in a way that violated equal protection, applied it in a way that deprived folks of meaningful due process[.]").

The Court then shifted the discussion to focus on judicial immunity.  See Tr. at 80:10-11 (Court).  It established, through questioning of both parties, that Gerhardt was no longer suing the Racing Commission as an entity, and that his remaining claims were against only the individuals.  See Tr. at 80:16-81:10 (Court; Howell; Richards).[12]   The Racing Commission

---

[12]Gerhardt stated during the hearing that his inclusion of the Commission in the caption was an oversight:

THE COURT:  The Eleventh is only going to cover the commission, right?

Defendants argued that this fact does not alter the "quasijudicial immunity analysis," because Gerhardt brought suit against the individuals in their official capacities.  Tr. at 82:5-8 (Howell). Gerhardt again argued that there were insufficient constitutional safeguards to allow any form of judicial immunity.  See Tr. at 86:7-12 (Richards).  The Court noted, however, that the Supreme Court of New Mexico could potentially resolve all of the Plaintiffs' claim, and that this ability to appeal makes the Racing Commission's decision seem like a real judicial function.  See Tr. at 87:12-22 (Court; Richards).  The Plaintiffs responded that the Racing Commission should not be able to rule on whether its sudden decision to interpret its regulations differently was legal.  See Tr. at 97:6-17 (Richards).  The Court ultimately remarked that "it's going to be a hard sell to say that judicial immunity goes down to the level of the executive director and the steward."  Tr. at 101:21-24 (Court).  The Court confirmed with the Racing Commission Defendants, however,

----

MR. HOWELL:  Understood.

THE COURT:  You concede that, right?

MS. RICHARDS:  Your Honor, we did in our response.  So to the extent the commission was still left in the caption --

THE COURT:  Are you suing the commissioners in their official capacity?

MS. RICHARDS:  No, sir.

THE COURT:  Okay.  Just individually?

MS. RICHARDS:  Right.  And I will clarify, in the complaint the commission itself is not listed in any cause of action, nothing covers them.  The New Mexico Racing Commission was just still left in the caption as these folks worked for them.

THE COURT:  Are you suing the commission?

MS. RICHARDS:  No, sir.

Tr. at 80:16-81:8 (Court; Richards).

that it could cease its consideration of Gerhardt's federal claims if it found judicial immunity. See Tr. at 106:1-4 (Court; Howell).

Gerhardt then attempted to circumvent the state's Eleventh Amendment immunity for his prima facie tort claim by arguing that the individual Defendants acted outside the scope of their authority.   See Tr. at 107:9-25 (Court; Richards).   The Racing Commission Defendants responded that Gerhardt made no similar argument in his complaint.  See Tr. at 109:20-110:4 (Howell).

The Court then summed up its opinions.  See Tr. at 110:9-113:5 (Court).  It noted that it was unsure on its power and obligation to act and the ripeness issue.  See Tr. at 110:9-15 (Court). It stated that the Racing Commissioners would probably qualify for judicial immunity, but that Keiter and Mares would not.  See Tr. at 110:25-111:2 (Court).  The state claim, the Court noted, would likely fail, because the Defendants did not act outside the scope of their authority.  See Tr. at 111:5-10 (Court).  Finally, it noted that it would likely grant the Woods Motion.  See Tr. at 111:11-15 (Court).

### 4.    The Court's Memorandum Opinion and Order Granting the Defendants' Motions to Dismiss.

The Court issued its Memorandum Opinion and Order granting (i)  the Defendant Roscoe Woods' Motion to Dismiss the Complaint; (ii) the Racing Commission Defendants' Motion to Dismiss; and (iii) the Plaintiff's Motion for Leave to File Sur-Reply to Defendant Woods' Reply in Support of the Motion to Dismiss.  See Memorandum Opinion and Order, filed on January 20, 2016 (Doc. 46)("MOO").

First, the Court granted Gerhardt's Surreply Motion so that "Gerhardt may sharpen his arguments."  MOO at 62.  Second, the Court granted Defendant Roscoe Woods' Motion to Dismiss.  See MOO at 62.  The Court concluded that qualified immunity protects Woods from

Gerhardt's claims, because there was no constitutional violation and the law was not clearly established.  See MOO at 62.  The Court held that, to recover against Woods, Gerhardt must demonstrate, based on the facts alleged in his Complaint, "both that the Defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."[13]  MOO at 63 (quoting Riggins v. Goodman, 572 F. 3d 1101, 1107 (10th Cir. 2009)).  The Court concluded that Gerhardt has not sufficiently alleged that Woods violated his constitutional rights and, in any case, that the law on those rights is unsettled.  See MOO at 63.  The Court concluded that Woods is entitled to qualified immunity.  See MOO at 63.

Third, the Court concluded that Gerhardt failed to state a claim under rule 12(b)(6), because his allegations that Woods participated in a conspiracy were conclusory.  See MOO at 62.  The Tenth Circuit has stated that "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.  'Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'"  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(quoting Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)).  The Court found that the Complaint included only three paragraphs on Woods' participation in the alleged conspiracy, and fails to include any specific facts showing that the Defendants agreed or conspired to harm Gerhardt.  See MOO at 70; Complaint ¶¶ 107-109, at 14.  The Court dismissed Gerhardt's claims against Defendant Roscoe Woods with prejudice.  See MOO at 62.

---

[13]The Complaint does not explain whether it targets Woods in his official capacity, his individual capacity, or both.  See Woods Motion at 8.  The Woods Motion thus contended that sovereign immunity bars Gerhardt's claim against Woods in his official capacity.  See Woods Motion at 9-13.  At the hearing, the Court confirmed that Gerhardt brings only "a conspiracy claim for violation of federal constitutional rights under 1983 and it's limited to that."  Tr. at 5:10-23 (Court, Richards).  Gerhardt also stated that he is not suing Woods in an official capacity and that the NMTCA is irrelevant.  See Tr. at 5:10-23 (Court, Richards).  Gerhardt may, of course, maintain his federal constitutional claims against Woods in Woods' individual capacity.  See Ex parte Young, 209 U.S. 123, 163 (1908).

Fourth, the Court also granted the Commission Motion.  See MOO at 62.  The Court held that although Younger abstention and the Declaratory Judgment Act's discretion do not prevent the Court from hearing the case, ripeness concerns and certain Defendants' quasi-judicial immunity pose insurmountable bars to success.  See MOO at 62.  Ripeness is a component of the Article III requirement that limits judicial review to "cases or controversies."  U.S. Const. art. III, § 2.  See U.S. West, Inc. v. Tristani, 182 F.3d at 1208.  Courts must consider: "1) whether delayed review would cause hardship to the plaintiffs; 2) whether judicial intervention would inappropriately interfere with further administrative action; and 3) whether the courts would benefit from further factual development of the issues presented."  Sierra Club v. U.S. Dep't. of Energy, 287 F.3d at 1262-63.  The Court held that judicial intervention would inappropriately interfere with further administrative action.  See MOO at 71.

Fifth, the Court concluded that the Racing Commission Defendants were immune from Gerhardt's state civil conspiracy and prima facie tort claims.  See MOO at 62.  The Tenth Circuit recognizes that "officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion."  Guttman v. Khalsa, 446 F.3d at 1033 (citing Butz v. Economou, 438 U.S. 478, 514 (1978)).  For an official at an administrative hearing to enjoy absolute immunity, "(a) the official's functions must be similar to those involved in the judicial process, (b) the official's actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct."  Guttman v. Khalsa, 446 F.3d at 1033 (quoting Horwitz v. State Bd. of Med. Examr's, 822 F.2d 1508, 1513 (10th Cir. 1987))(internal quotation marks omitted).  The Court concluded that quasi-judicial immunity shields the Racing Commissioners from the Plaintiffs' claims for damages.  See MOO at 79.  The Court held that

the Racing Commissioners' functions are similar to those of judges in a judicial process, that their decisions are highly likely to cause litigation, and the regulatory scheme contains sufficient safeguards to prevent unconstitutional conduct.   See MOO at 79.   The Court dismissed Gerhardt's federal claims against the Racing Commissioners with prejudice because of their quasi-judicial immunity.  See MOO at 63.

Finally, the Court dismissed Gerhardt's federal claims against Keiter and Mares without prejudice, and the Court dismissed Gerhardt's state claims against the Racing Commission Defendants with prejudice.  See MOO at 63.  The Court concluded that the Racing Commission Defendants are immune from Gerhardt's state law claims.   See MOO at 83.   The Court concluded that Gerhardt's prima facie tort claim against Keiter, Mares and the Racing Commissioners fails because New Mexico has not waived immunity for prima facie tort claims against its employees, see MOO at 83 (quoting Derringer v. State, 2003-NMCA-073, ¶ 16, 68 P.3d 961, 965), and because Gerhardt failed to allege that any of the Defendants acted outside the scope of their duties,  see MOO at 83.

### 5.      The Court Enters Final Judgment.

The Court entered Final Judgment on January 21, 2016.  The Court ordered that: (i) all of the federal claims brought, or that Gerhardt could have brought, against Mares and Keiter, are dismissed without prejudice; (ii) all of Gerhardt's federal claims brought, or which he could have brought, against the New Mexico Racing Commission Defendants, are dismissed with prejudice; and (iii) all of Plaintiff Robert Gerhardt's state claims are dismissed with prejudice.  See Final Judgment at 1.

### 6.      Gerhardt's Motion for Reconsideration.

On February 19, 2016, twenty-nine days after the Court entered its Final Judgment in the

case, Gerhardt filed his Motion to Reconsider its Judgment.   See Plaintiff's Motion to Reconsider.

In conjunction with his Motion to Reconsider, Gerhardt also filed with the Court a Notice of Withdrawal of Appeal notifying the Court that Gerhardt formally withdrew his administrative appeal of the Board of Stewards.   See Notice of Withdrawal of Appeal, filed on February 29, 2016 (Doc. 49-1)("Notice of Withdrawal of Appeal").   In the Notice of Withdrawal of Appeal, Gerhardt asserts that "it is now apparent that this Board lacks jurisdiction over the Constitutional claims of Appellants and has no intention of remedying any deprivations that such violations of Constitutional protections by employees of the NMRC caused."   Notice of Withdrawal of Appeal at 1.

Gerhardt asserts in the Motion to Reconsider that "Defendants Mares and Keiter engaged in and completed conduct that cannot be undone by the NMRC via any administrative proceeding."   Motion to Reconsider at 2.   Gerhardt asserts that he cannot "be compensated for his loss and damages resulting from Defendant's actions, by an administrative decision of the NMRC."   Motion to Reconsider at 2.   Gerhardt further asserts that he "was harmed in an absolute and concrete way by the irreversible scratch of his horse from a race."   Motion to Reconsider at 3.

Gerhardt further asserts that the NMRC has "never argued or demonstrated an ability to compensate Plaintiff for his harm/damages or that it has any jurisdictional authority to hear a constitutional due process claim."   Motion to Reconsider at 3.   Gerhardt asserts that the NMRC lacks the jurisdiction or authority to change post hoc the procedural violations and compensate him. See Motion to Reconsider at 3.

Gerhardt argues that the appeal of the scratch decision in this matter was never required

to exhaust the administrative remedies because it is not the "proprietary of the interpretation of a NMRC rule or the correctness of the decision by Defendant Keiter to scratch Defendant's horse that is the basis for this case."  Motion to Reconsider at 7.  Gerhardt argues that the Court erred by allowing the Racing Commission Defendants to engage in conduct that is "procedural obstruction by an administrative agency."  Motion to Reconsider at 7.  Gerhardt further argues that the factual and administrative record was completely developed except for the Racing Commission's decision on whether to adopt or reject the hearing officer's report finding the Racing Commission through its steward acted incorrectly, causing harm to the Plaintiff.  See Motion to Reconsider at 8.

Gerhardt asserts that the doctrine of exhaustion applies to his claims with respect to the administrative appeals process before the Board of Stewards and the NMRC.  See Motion to Reconsider at 8.  Gerhardt argues that in this District, the courts apply the exhaustion doctrine in two ways: (i) mandatory statutory exhaustion doctrine; and (ii) and common law (judicial) discretionary exhaustion doctrine.  See Motion to Reconsider at 8.  Gerhardt argues that, under the theory of common law, discretionary exhaustion, there is no requirement to have brought an appeal of an administrative hearing.  See Motion to Reconsider at 8.   Gerhardt argues that his case meets all of the grounds for excusing failure to exhaust:

> (1) the unexhausted remedy would plainly be inadequate; (2) the plaintiff makes a constitutional claim that is collateral to its merits claim and that would remain standing after exhaustion of the administrated remedy; (3) the plaintiff seeks relief that the administrative agency cannot grant (such as a facial challenge to agency regulations); (4) exhaustion of administrative remedies would be futile; and (5) the plaintiff may suffer irreparable harm if unable to secure immediate judicial review.

Motion to Reconsider at 8 (quoting Dawson Farms, LLC v. Farm Serv. Agency, 504 F.3d 592, 606 (5th Cir. 2007); Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp., 440 F.3d 992, 999-1000

(8th Cir. 2006); <u>McBride Cotton & Cattle Corp. v. Veneman</u>, 290 F.3d 973, 980 (9th Cir. 2002)).

Thus, Gerhardt argues that it is within the Court's discretion to apply common law exhaustion.

<u>See</u> Motion at 9.

       **7.**        **<u>Mares and Keiter's Response</u>.**

      In response to the Motion for Reconsideration, Mares and Keiter submitted Defendants

Mares and Keiter's Response in Opposition to Plaintiff's Motion to Alter or Reconsider

Judgment, filed on March 7, 2016 (Doc. 50)("Response to Motion for Reconsideration").  Mares

and Keiter assert that a motion to alter or amend a judgment must be filed "no later than 28 days

after the entry of the judgment." <u>See</u> Response to Motion for Reconsideration at 13 (quoting Fed.

R. Civ. P. 59(e)).  Mares and Keiter assert that the twenty-eight day deadline for any such motion

with respect to the Court's Judgment, entered on January 21, 2016, lapsed on February 18, 2016,

and, therefore, the Court can grant the Motion for Reconsideration, filed February 19, 2016, can,

only if it meets the criteria for relief from a final judgment under rule 60.  <u>See</u> Response to

Motion for Reconsideration at 14.

      Mares and Keiter assert that a claim for relief from judgment on the basis of "any other

reason justifying relief from operation of the judgment" is cognizable where there is evidence of

extraordinary circumstances, or where there is evidence of extreme hardship or injustice, and,

once extraordinary circumstances or hardship is found, this rule is to be liberally applied to

accomplish justice.  <u>See</u> Response to Motion for Reconsideration at 14 (quoting <u>United States v.

McDonald</u>, 86 F.R.D. 204 at 208 (N.D. Ill. 1980)).  Mares and Keiter argue that a court will not

generally treat an untimely rule 59(e) motion as a rule 60(b) motion when the party is seeking

"'reconsideration of matters properly encompassed in a decision on the merits' contemplated by

Rule 59(e)." See Response to Motion for Reconsideration at 14 (quoting United States v. McDonald, 86 F.R.D. 204 (quoting Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005))).

Mares and Keiter assert that nowhere in his Motion to Reconsider does Gerhardt cite any authority regarding ripeness that was not already presented in his Response to the Motion for Reconsideration and considered by the Court in its ruling on Defendants' Motion to Dismiss the Amended Complaint. See Response to Motion for Reconsideration at 15. Mares and Keiter assert that the Plaintiff has taken an unreasonable and unilateral action of abandoning his administrative process and that terminating the administrative process will hinder the Racing Commission's administrative operations and its ability to make required decisions. See Response to Motion for Reconsideration at 15; Gordon v. Norton, 322 F.3d 1213, 1221-22 (10th Cir. 2003).

Mares and Keiter argue that the Court already held:

[t]he Court cannot find, at least at this time, that the Racing Commission's lack of action yet constitutes a denial, ends the proceedings, or nullifies the Court's normal deference to administrative action.

See Response to Motion for Reconsideration at 16 (quoting MOO at 75). Mares and Keiter assert that the only circumstance that has changed since the Court issued its Order is that the Plaintiff now attempts to substitute his own judgment on futility, and to impose his will upon the Court by unilateral action. See Response to Motion for Reconsideration at 16. Mares and Keiter further assert that a case can be dismissed for failure to exhaust even in the absence of a statutory administrative appeal when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial

review."  See Response to Motion for Reconsideration (quoting U.S. v. Ca. Care Corp., 709 F.2d 1241, 1248 (9th Cir. 1983)).

**8.      Gerhardt's Reply.**

In Response to the Defendants' Response to the Motion for Reconsideration, Gerhardt submitted Plaintiff's Reply in Support of His Judgment to Alter or Reconsider Judgment, filed on March 14, 2016 (Doc. 51)("Reply in Support of Motion for Reconsideration").

Gerhardt first asserts that the administrative process asserted by the Defendants is irrelevant to his claims for damages under 42 U.S.C. § 1983 against Mares and Keiter.  See Reply in Support of Motion for Reconsideration at 4.  Although Gerhardt formally noticed the Court that he had withdrawn his appeal with the Board of Stewards, Gerhardt argues that the Court in other matters has held that an employee is permitted to move forward with her employment discrimination claim even though she had not exhausted available state-court remedies in a matter that was ultimately dismissed on the grounds that the employee did not pursue judicial review of the final personnel decision upholding her adverse employment action. See Reply in Support of Motion for Reconsideration at 4 (quoting Duprey v. Twelfth Judicial District Court, 2009 WL 2482170, at *18 (D.N.M., 2009)(Browning, J.).

Gerhardt also reiterates his assertion that his claims for constitutional violations are ripe. See Reply in Support of Motion for Reconsideration at 8.  Gerhardt argues that his claim is ripe, because the Racing Commission's hearing process does not affect or otherwise impact whether constitutional violations already occurred.  See Reply in Support of Motion for Reconsideration at 8.  Gerhardt argues that the Court does not need to, nor should it abstain while awaiting a Racing Commission decision, for which it lacks authority to hear, in order for Gerhardt to receive relief under his § 1983 claims.  See Reply in Support of Motion for Reconsideration at 8.

9.     **The Motion for Reconsideration Hearing.**

The Court held a hearing on the Motion for Reconsideration on May 16, 2016.  See Reconsideration Tr. (Court; Richards; Wolf).  Gerhardt first asserted that the Court's decision to dismiss his claims is inconsistent with the Court's decision in Dupree v. Twelfth Judicial District, 2009 WL 2482170 at *18, and that he filed the motion for reconsideration based on abandoning the administrative process with the Board of Stewards, which was unable to afford any relief to him.  See Reconsideration Tr. 4:1-14.

The Court then asked Gerhardt if there have been any developments in the case since it entered an opinion and final judgment.  See Reconsideration Tr. 4:15-17 (Court).  Gerhardt informed the Court that the Racing Commission decided to hire its own personally-selected hearing officer and initiate another hearing in the matter.  See Reconsideration Tr. 4:18-20 (Richards).  Gerhardt then reiterated that his case focuses on the due process violations surrounding the Racing Commission's decision to scratch Gerhardt's horse from the race and that another hearing provided by the Racing Commission would not afford Gerhardt a remedy to that which the horse scratch caused.  See Reconsideration Tr. 6:4-20 (Richards).  The Court then asked Gerhardt why he cannot raise the issues through the state court system.  See Reconsideration Tr. 8:3-5 (Court).  Gerhardt argued that this case involves a due process violation that comes under the Court's jurisdiction under 42 U.S.C. § 1983.  See Reconsideration Tr. 8:13-24 (Richards).

Mares and Keiter then argued that the Gerhardt's Motion for Reconsideration was under rule 59(e) was untimely, and that under rule 60(b), the Court can only grant relief from judgment can only in exceptional and extraordinary circumstances and that the Court had recently held that it is not enough to argue the same issues that the Court has already addressed, which is what

Gerhardt has done in his motion.  See Reconsideration Tr. 11:16-12:8 (Wolf).  The Defendants further asserted that the Plaintiff has not raised anything to demonstrate the basis for an extraordinary or exceptional circumstance warranting relief from the judgment.  See Reconsideration Tr. 12:11-19 (Wolf).

Mares and Keiter then asserted that the Court dismissed the Gerhardt's claims on the basis of ripeness rather than exhaustion of administrative remedies. See Reconsideration Tr. 12:20-23 (Wolf).  Mares and Keiter argued that their Motion to Dismiss recognized that an equal protection claim is not subject to exhaustion, and therefore their motion was to ripeness and the Court properly considered the three-part test that the Tenth Circuit administered in Sierra Club v. U.S. Dep't of Energy, 287 F.3d 1256 (10th Cir. 2002).  Mares and Keiter then argued that New Mexico law requires petitions before administrative agencies to raise the constitutional issues before the administrative agencies to preserve them, and state courts can consider constitutional questions that the plaintiff raised in association with an administrative proceeding.  See Reconsideration Tr. 15:2-12 (Wolf).

Mares and Keiter reiterated their argument from the briefing that scratches are a common occurrence nationwide and apply to more parties than just Gerhardt, and that administrative proceedings are the appropriate venue to challenge the scratch.  See Reconsideration Tr. 17:10-16 (Wolf).  The Defendants then argued that the Plaintiff waived a large number of his claims by aborting the administrative proceeding.  See Reconsideration Tr. 18:13-14 (Wolf).  Mares and Keiter then argued that Gerhardt's claims were not ripe and that Gerhardt needed to complete the administrative proceeding once started, for his claim to be considered ripe.  See Reconsideration Tr. 19:19-25 (Wolf).

The Court then asked Gerhardt that, if the case is now ripe, why he would not consider filing a new complaint, because the Court dismissed his claim with prejudice.   See Reconsideration Tr. 20:7-8 (Court).  Gerhardt then argued that it was in the interest of judicial economy for the Court to retain the case, because it was already familiar with the issues.  See Reconsideration Tr. 20:16-18 (Court).

Gerhardt acknowledged that he brought the Motion for Reconsideration twenty-nine days after final judgment, which was one day after the twenty-eight day limit to bring a motion for reconsideration under rule 59, but that the Court may proceed with his Motion for Reconsideration under rule 60, and that the rule 59 standards apply.  See Reconsideration Tr. 23:6-10 (Richards).

The Court then asked Gerhardt to clarify whether he brought its Motion for Reconsideration pursuant to rule 59 or rule 60.  See Reconsideration Tr. 23:115-18 (Court). Gerhardt stated that the Court would be within its discretion to allow the Motion for Reconsideration to proceed under rule 59 due to "excusable neglect" or it could also proceed under rule 60 as well.  See Reconsideration Tr. 24:1-11 (Richards).

The Court expressed concern that Gerhardt's decision to dismiss the administrative proceeding would have an impact on his due process claims.  See Reconsideration Tr. 24:12-16 (Court).  Gerhardt responded that his due process claim survives the abandonment of the administrative proceeding because he is challenging due process violations that occurred before the scratch and not after.  See Reconsideration Tr. 25:1-15 (Richards).

## LAW REGARDING MOTIONS TO RECONSIDER UNDER RULE 59(e) AND 60

Motions to reconsider in civil cases fall into three categories:

(i) a motion to reconsider filed within [twenty-eight][14] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion.  See Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005).

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.).  See Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 (10th Cir. 2002).

Courts may treat motions for reconsideration as a rule 59(e) motion when the movant files within twenty-eight days of a court's entry of judgment.  See Price v. Philpot, 420 F.3d at 1167 n.9.  If the movant files outside that time period, courts should treat the motion as seeking relief from judgment under rule 60(b).  See Price v. Philpot, 420 F.3d at 1167 n.9.  "[A] motion for reconsideration of the district court's judgment, filed within [rule 59's filing deadline], postpones the notice of appeal's effect until the motion is resolved."  Jones v. United States, 355 F. App'x 117, 121 (10th Cir. 2009)(unpublished).  The time limit in rule 59(e) is now twenty-eight days from the entry of a judgment.  See Fed. R. Civ. P. 59(e).

Whether a motion for reconsideration should be considered a motion under rule 59 or rule

---

[14]Former rule 59 used to provide for a ten-day period after entry of judgment to file motions to reconsider.  In 2009, the rule was amended, extending the filing period to twenty-eight days:

> Experience has proved that in many cases it is not possible to prepare a satisfactory post-judgment motion in 10 days, even under the former rule that excluded intermediate Saturdays, Sundays, and legal holidays. These time periods are particularly sensitive because Appellate Rule 4 integrates the time to appeal with a timely motion under these rules. Rather than introduce the prospect of uncertainty in appeal time by amending Rule 6(b) to permit additional time, the former 10-day periods are expanded to 28 days.

Federal Rules of Civil Procedure, Rule 59, Legal Information Institute, https://www.law.cornell.edu/rules/frcp/rule_59.

60 is not only a question of timing, but also "depends on the reasons expressed by the movant."

Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194,

1200 (10th Cir. 2011).   Where the motion "involves 'reconsideration of matters properly

encompassed in a decision on the merits,'" a court considers the motion under rule 59(e).  Phelps

v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)(quoting Martinez v. Sullivan, 874 F.2d

751, 753 (10th Cir. 1989)).   In other words, if the reconsideration motion seeks to alter the

district court's substantive ruling, then it should be considered a rule 59 motion and be subject to

rule 59's constraints.  See Phelps v. Hamilton, 122 F.3d at 1324.  In contrast, under rule 60,

> [o]n motion and just terms, the court may relieve a party or its legal
> representatives from a final judgment, order, or proceeding for the following
> reasons:
>
> > (1)     mistake, inadvertence, surprise, or excusable neglect;
> >
> > (2)     newly discovered evidence that, with reasonable diligence,
> > could not have been discovered in time to move for a new
> > trial under Rule 59(b);
> >
> > (3)     fraud (whether previously called intrinsic or extrinsic),
> > misrepresentation, or misconduct by an opposing party;
> >
> > (4)     the judgment is void;
> >
> > (5)     the judgment has been satisfied, released or discharged; it is
> > based on an earlier judgment that has been reversed or
> > vacated; or applying it prospectively is no longer equitable;
> > or
> >
> > (6)     any other reason that justifies relief.
>
> Fed. R. Civ. P. 60(b).  Neither a rule 59 nor a rule 60 motion for reconsideration
> are appropriate vehicles to reargue an issue previously addressed by the court
> when the motion merely advances new arguments, or supporting facts which were
> available at the time of the original motion. . . .  Grounds warranting a motion to
> reconsider include (1) an intervening change in the controlling law, (2) new
> evidence previously unavailable, and (3) the need to correct clear error or prevent
> manifest injustice.

<u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012.  "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012.  A district court has considerable discretion in ruling on a motion to reconsider.  See <u>Phelps v. Hamilton</u>, 122 F.3d at 1324.

A motion for reconsideration under rule 59(e) is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."  <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012.  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012.  A district court has considerable discretion in ruling on a motion to reconsider under rule 59(e).  See <u>Phelps v. Hamilton</u>, 122 F.3d 1309, 1324 (10th Cir. 1997).

Rule 60 authorizes a district court to, "[o]n motion and just terms[,] . . . relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons," including "any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  A court cannot enlarge the time for filing a rule 59(e) motion.  See <u>Brock v. Citizens Bank of Clovis</u>, 841 F.2d 344, 347 (10th Cir. 1988)(holding that district courts lack jurisdiction over untimely rule 59(e) motions); <u>Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.</u>,  2012 WL 869000, at *2 (D.N.M. 2012)(Browning, J.)("The Court may not extend the time period for timely filing motions under Rule 59(e) . . . .").  "A motion under rule 59 that is filed more than 28 days after entry of

judgment may be treated as a Rule 60(b) motion for relief from judgment."  12 James Wm. Moore, Moore's Federal Practice § 59.11[4][b], at 59-32 (3d ed. 2012)(citations omitted). Nevertheless, a court will not generally treat an untimely rule 59(e) motion as a rule 60(b) motion when the party is seeking "'reconsideration of matters properly encompassed in a decision on the merits' contemplated by Rule 59(e)."  Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005).

Under some circumstances, parties can rely on rule 60(b)(1) for a mistake by their attorney or when their attorney acted without their authority.  See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . .").  Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or to comply with deadlines.  See Yapp v. Excel Corp., 186 F.3d at 1231.  If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. 380, 394 (1993); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding that attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

> Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).  The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences."  Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).  The Court has previously stated:

> There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigation decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

Wilson v. Jara, 2012 WL 1684595, at *7 (D.N.M. 2012)(Browning, J.).

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted).  "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)."  Moore, supra, § 60.48[2], at 60-182.  Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n.11 (1988)("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive.").  "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in

'extraordinary circumstances.'"   Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863

(quoting Ackermann v. United States, 340 U.S. 193, 202 (1950)).

Generally, the situation must be one beyond the control of the party requesting relief

under rule 60(b)(6) to warrant relief.   See Ackermann v. United States, 340 U.S. 193, 202

(1950)("The comparison [of prior precedent] strikingly points up the difference between no

choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and

counsel; no chance for negligence and inexcusable negligence.   Subsection 6 of Rule 60(b) has

no application to the situation of petitioner.").   Legal error that provides a basis for relief under

rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United

States:

> The kind of legal error that provides the extraordinary circumstances justifying
> relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720,
> 722 (10th Cir. 1975)(en banc)].   In that case, this court granted relief under
> 60(b)(6) when there had been a post-judgment change in the law "arising out of
> the same accident as that in which the plaintiffs . . . were injured." Pierce v. Cook
> & Co., 518 F.2d at 723.   However, when the post-judgment change in the law did
> not arise in a related case, we have held that "[a] change in the law or in the
> judicial view of an established rule of law" does not justify relief under Rule
> 60(b)(6).   Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

## ANALYSIS

The Court will deny Gerhardt's Motion for Reconsideration.   First, the Court concludes

that Gerhardt's Motion to Reconsider, filed twenty-nine days after the Court entered its Final

Judgment, is untimely under rule 59.   Second, the Court concludes that Gerhardt's unilateral

decisions to abandon his administrative appeals process with Racing Commission's Board of

Stewards does not present the Court with a sufficient basis that demonstrates a change of

circumstances that warrants the Court to reconsider its Final Judgment under rule 60. The Court will thus deny the Plaintiff's Motion to Reconsider.

## I.      GERHARDT'S MOTION FOR RECONSIDERATION IS UNTIMELY UNDER RULE 59.

Gerhardt's Motion for Reconsideration is untimely under rule 59. Courts may treat motions for reconsideration as a rule 59(e) motion when the movant files within twenty-eight days of a court's entry of judgment. See Price v. Philpot, 420 F.3d at 1167 n.9. A court cannot enlarge the time for filing a rule 59(e) motion. See Brock v. Citizens Bank of Clovis, 841 F.2d at 347; Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., No. 11-0103, 2012 WL at *2. If the movant files outside that time period, courts should treat the motion as seeking relief from judgment under rule 60(b). See Price v. Philpot, 420 F.3d at 1167 n.9. Here, Gerhardt was aware of the deadline to bring a Motion for Reconsideration under rule 59(e), yet filed his Motion to Reconsider one day after the twenty-eight day deadline. Gerhardt's Motion for Reconsideration, therefore, is untimely under rule 59.

## II.     GERHARDT'S MOTION FOR RECONSIDERATION DOES NOT PRESENT A VALID REASON FOR RELIEF FROM JUDGMENT.

Notwithstanding the untimeliness of Gerhardt's Motion for Reconsideration under rule 59(e), Gerhardt's Motion for Reconsideration under rule 60 is also substantively inappropriate. A motion for reconsideration under rule 60 is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete v. Does, 204 F.3d at 1012. "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d

at 1012.  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012.

Here, the only change in circumstances for Gerhardt since the Court entered Final Judgment is that Gerhardt has abandoned his administrative appeal with the Racing Commission's Board of Stewards.  Gerhardt's argument that his claim is now ripe, because he dropped his administrative appeal is unpersuasive.  Gerhardt's decision to abandon his administrative appeal does not alter that the Court concluded that the claim was not ripe pending the administrative appeals process.  Moreover, the Court concludes that abandoning the administrative appeal has not resulted in an intervening change in the controlling law, the discovery of previously unavailable evidence, or the need to correct clear error or prevent manifest injustice.  The Court concludes that Gerhardt's Motion to Reconsider, therefore, reargues previously litigated issues.

Gerhardt's argument that his alleged injuries from the horse scratch are irreparable and that the Racing Commissions cannot provide an adequate remedy, are inadequate to justify a reconsideration of the Court's Final Judgment under rule 60(b)(6).  Gerhardt must demonstrate an exceptional change of circumstances that warrants a relief from judgment.  In <u>Klapprott v. United States</u>, 335 U.S. 601, 613-614 (1949) the Supreme Court found extraordinary circumstances applied to a petitioner who was incarcerated at the time when a default judgment revoking his citizenship was entered against him when he failed to receive notice of the citizenship hearing as the result of his incarceration.  Unlike in <u>Klapprott v. United States</u>, Gerhardt did not lack the freedom to act, respond, or engage the administrative appeals process for his claim like the incarcerated petitioner.  Gerhardt unilaterally abandoned his administrative

appeal, which was within his discretion.  Gerhardt had the opportunity to engage the process, but chose not to do so.

Furthermore, reasons for justifying relief from final judgment must generally be beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief.  See Ackermann v. United States, 340 U.S. at 202.  Gerhardt's decision to abandon his administrative appeal with the Racing Commission was fully within in his control and, therefore, his argument relying on rule 60(b)(6) for relief from final judgment fails.

In conclusion, the Court denies Gerhardt's Motion to Reconsider, because it was untimely under rule 59(e) and because it did not demonstrate an exceptional change in circumstance warranting relief from final judgment.  Gerhardt's decision to abandon the administrative appeals process with the Racing Commission does not render his claim ripe. Gerhardt must first provide the administrative appeals process an opportunity to resolve his claim.

**IT IS ORDERED** that the Plaintiff's Motion to Alter or Reconsider Judgment, filed February 19, 2016 (Doc. 49), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

A. Blair Dunn
Dori Ellen Richards
Western Agriculture, Resource and Business Advocates, LLP
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Walter J. Melendres
Carolyn A. Wolf
Trent A. Howell
Montgomery & Andrews, PA
Santa Fe, New Mexico

*Attorneys for Defendants Vincent Mares, New Mexico Racing Commission, David Keiter, Robert M. Doughty, III, Beverly Bourguet, Jerry Cosper, Gayla D. McCulloch, and Ray Willis*

Hector Balderas
    Attorney General of the State of New Mexico
Ari Biernoff
    Assistant Attorney General
New Mexico Attorney General's Office
Santa Fe, New Mexico

*Attorney for Defendant Roscoe Woods*